Javier L. Merino
Dann Law
1 Meadowlands Plaza, Suite 200
East Rutherford, New Jersey 07073
Telephone: (216) 373-0539
Facsimile: (216) 373-0536
notices@dannlaw.com

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY
NEWARK DIVISION

| | |
|---|---|
| **RACHID BOUAYAD**, <br> 265 Chestnut Street <br> Kearny, NJ 07032-2501 <br><br> Plaintiff, <br><br> vs. <br><br> **NEWREZ LLC D/B/A SHELLPOINT MORTGAGE SERVICING**, <br><br> Defendant. | CASE NO.: <br><br> JUDGE: <br><br> **COMPLAINT FOR DAMAGES** <br><br> **JURY DEMAND ENDORSED HEREON** |

Plaintiff Rachid Bouayad ("Bouayad"), through counsel, for his Complaint against Defendant NewRez LLC d/b/a Shellpoint Mortgage Servicing ("Shellpoint"), states:

**WHY BOUAYAD IS FILING THIS COMPLAINT**

1. Bouayad is suing his mortgage servicer Shellpoint because of Shellpoint's ongoing efforts to foreclose on his home without cause and because Shellpoint persistently has falsely stated that Bouayad is significantly behind on his mortgage payments.

2. Bouayad successfully completed a Chapter 13 bankruptcy, complied with his post-petition monthly mortgage payments, and paid off the arrearage on his mortgage account. Bouayad went on to make all of his required monthly mortgage payments after completion of the

1

bankruptcy. Bouayad thought that by paying in full his past due payments through the bankruptcy and making all ongoing mortgage payments during the course of the bankruptcy and all payments due after the discharge, that he would be able to enjoy the benefit of his diligence and persistence.

3. After servicing was transferred from Nationstar Mortgage, LLC ("Nationstar") to Shellpoint on September 16, 2018, Shellpoint sent Bouayad a mortgage statement advising him he was current on his mortgage. One week later, Shellpoint sent Bouayad a mortgage statement that showed that Bouayad was behind by $11,048.76. According to Shellpoint, not only is Bouayad behind on his mortgage payments, but also in default.

4. Bouayad notified Shellpoint of its error and demanded Shellpoint correct the situation, but all efforts were unsuccessful. Shellpoint has persisted in making the same or similar false statements and threatened to foreclose on Bouayad's home. Because of the false accusation and reckless actions of Shellpoint, Bouayad has no choice but to bring this lawsuit to address these violations of law.

## PARTIES, JURISDICTION, AND VENUE

5. Bouayad is the owner of residential real property, located at and commonly known as 265 Chestnut Street, Kearny, New Jersey 07032-2501 (the "Home") which he has occupied as his primary, principal residence at all this relevant to the Complaint.

6. Shellpoint is the current servicer of a note executed by Bouayad (the "Note") and of a mortgage on the Home that secures said note (the "Mortgage") (collectively, the "Loan"). The Loan is attached as ***Exhibit 1***.

7. Servicing rights to the Loan were transferred from non-party Nationstar to Shellpoint effective September 16, 2018.

8. This Court has jurisdiction pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1692k(d), as this action arises under the Dodd-Frank Wall Street Reform and Consumer Protection Act (DFA), the Real Estate Settlement Procedures Act, 12 U.S.C. §§ 2601, *et seq.* (RESPA), and the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq.* (FDCPA).

9. This Court has supplemental jurisdiction to hear any and all state law claims that are plead herein or that may subsequently arise pursuant to 28 U.S.C. § 1367.

10. Venue lies in this District pursuant to 28 U.S.C. § 1391(b) as a substantial part of the events or omissions giving rise to the claims asserted herein occurred in this District.

## SUMMARY OF CLAIMS

11. This action is filed to enforce regulations promulgated by the Consumer Financial Protection Bureau (CFPB) and implemented pursuant to 12 U.S.C. § 2605(f) that became effective on January 10, 2014, specifically, 12 C.F.R. § 1024.1, *et seq.* ("Regulation X").

12. In January 2013, the CFPB issued a number of final rules concerning mortgage markets in the United States, pursuant to the DFA, Public Law No. 111-203, 124 Stat. 1376 (2010).

13. Specifically, on January 17, 2013, the CFPB issued the Real Estate Settlement Procedures Act Mortgage Servicing Final Rules, 78 F.R. 10695 (Regulation X) (February 14, 2013), which became effective on January 10, 2014.

14. Mortgage servicers are prohibited from failing "to take timely action to respond to a borrower's requests to correct errors relating to allocation of payments, final balances for

purposes of paying off the loan, or avoiding foreclosure, or other standard servicer's duties." 12 U.S.C. § 2605(k)(1)(C).

15. Mortgage servicers are prohibited from failing "to comply with any other obligation found by the [CFPB], by regulation, to be appropriate to carry out the consumer protection purposes of [RESPA]." 12 U.S.C. § 2605(k)(1)(E).

16. Congress enacted the FDCPA to prohibit the "[u]se of abusive, deceptive, and unfair debt collection practices." 15 U.S.C § 1692(a).

17. Bouayad asserts claims for relief against Shellpoint for breaches of the specific rules under Regulation X and the FDCPA as set forth, *infra*.

18. Bouayad has a private right of action under RESPA pursuant to 12 U.S.C. § 2605(f) and the FDCPA pursuant to 15 U.S.C. § 1692k(a) for the claimed breaches and such action provides for remedies including actual damages, statutory damages, and attorneys' fees and costs.

19. Bouayad additionally asserts a statutory claim for violations of the New Jersey Consumer Fraud Act, N.J.S.A. § 56:8-2 ("CFA").

## FACTUAL BACKGROUND

20. In 2011, Bouayad suffered financial distress and fell behind on his mortgage payments. To allow Bouayad time to pay the past due mortgage payments as well as reorganize other debts, he sought protection by filing a Chapter 13 bankruptcy petition.

21. On January 15, 2014, Bouayad filed a voluntary petition for protection under Chapter 13 of the United States Bankruptcy Code in the United States Bankruptcy Court for the

District of New Jersey, in the matter assigned case number 14-10727-SLM (the "Bankruptcy"). A copy of Bankruptcy docket sheet is attached as *Exhibit 2*.

22. On March 11, 2014, Bouayad filed a Chapter 13 Plan proposing for the Debtor's mortgage arrears to Nationstar, the predecessor servicer of the Loan, to be paid in full over a period of approximately 60 months (the "Plan"). A copy of the Plan is attached as *Exhibit 3*.

23. Specifically, the Plan provided that Bouayad "shall pay to the Trustee (as part of the Plan) allowed claims for arrearages on monthly obligations and [Bouayad] shall pay directly to [Nationstar] monthly obligations due after the bankruptcy filing." *See Exhibit 3*.

24. On April 11, 2014, the Bankruptcy Court entered an order confirming the Plan (the "Order"). A copy of the Order is attached as *Exhibit 4*.

25. The Order provided "the [Plan]...is hereby confirmed." *See Exhibit 4*.

26. On May 27, 2014, Nationstar filed a proof of claim in the Bankruptcy (the "Claim"). A copy of the Bankruptcy's claim register is attached as *Exhibit 5*.

27. The first page of the Claim states that the arrearage, or amount past due on the Loan when the Bankruptcy was filed, amounted to $56,789.93. The last page of the Claim states that the "[t]otal amount necessary to cure default as of the petition date" was $56,789.93. A copy of the Claim is attached as *Exhibit 6*.

28. The Claim also provided that, effective February 2, 2014, the monthly payment amount was $1,979.24. See *Exhibit 6*.

29. Bouayad made all required post-petition monthly mortgage and trustee payments due under the Chapter 13 Plan.

30.     This is first evidenced by Nationstar's July 18, 2018 mortgage statement advising Mr. Bouayad that he had a $0.00 post-petition past unpaid amount. A copy of the July 18, 2018 mortgage statement is attached as ***Exhibit 7***.

31.     This was again evidenced by Shellpoint's October 18, 2018 mortgage statement showing that Bouayad was current on his post-petition obligations. A copy of the October 18, 2018 mortgage statement is attached as ***Exhibit 8***.

32.     Additionally, on October 19, 2018, the Chapter 13 Bankruptcy Trustee (the "Trustee") filed a Notice of Completion of Chapter 13 Payments (the "Notice of Completion") informing Bouayad that her records indicated that he successfully paid off his Chapter 13 Plan. A copy of the Notice of Completion is attached as ***Exhibit 9***.

33.     On October 22, 2018, Shellpoint filed a notice of transfer of claim other than for security, as servicing rights to the Loan had transferred from Nationstar to Shellpoint. *See Exhibit 5*.

34.     However, just one week after advising Bouayad he was current on all payments, Shellpoint sent Bouayad a mortgage statement dated October 25, 2018 which claimed he was, quite suddenly, behind by a staggering $11,048.76. A copy of the October 25, 2018 mortgage statement is attached as ***Exhibit 10***.

35.     On January 28, 2019, the Trustee filed her final report and account (the "Final Report"), stating that, as of October 16, 2018, Bouayad had paid $57,315.93 in mortgage arrears. A copy of the Final Report is attached as ***Exhibit 11***.

36. Pursuant to the Final Report, Bouayad was not only current on all obligations under the Loan, but had, in fact, paid $526.00 more than was required. *Compare Exhibit 6 and Exhibit 11*.

37. On March 7, 2019, Federal Home Loan Mortgage Corp. ("FHLMC"), the Loan's creditor, filed a notice of mortgage payment change. *See Exhibit 5*.

38. The Bankruptcy was terminated on March 8, 2019. *See Exhibit 2*.

39. Bouayad timely remitted funds in satisfaction of his payment obligations under the terms of the Loan for the months of November 2018 through March 2019. A copy of the Loan's Transaction History is attached as **Exhibit 12**.

40. Shellpoint cashed every one of the payments remitted by Bouayad in satisfaction of his monthly obligations for the payments coming due for the months of November 2018 through March 2019. *See Exhibit 12*.

**BOUAYAD ATTEMPTS TO HAVE SHELLPOINT CORRECT ERRORS**

41. On or about January 15, 2019, Bouayad, through counsel, sent a notice of error to Shellpoint (the "NOE") informing Shellpoint that Bouayad was not behind on his payments and its November 2018 mortgage statement contained errors. A copy of the NOE is attached as **Exhibit 13**.

42. The NOE attaches proof of payments for pre-petition and post-petition mortgage payments and requests a full accounting of mortgage payments and charges for the last five years. *See Exhibit 13*.

43. The NOE provided clear instructions to Shellpoint as to how it should respond and the consequences if it failed to respond. *See Exhibit 13*.

44. The NOE was sent to Shellpoint at the address designated by Shellpoint for receipt of notices of error, which is Shellpoint Mortgage, P.O. Box 10826, Greenville, SC 29603-0826. *See Exhibits 8, 10* (Mortgage Statements); see also Shellpoint's pertinent website at: https://www.shellpointmtg.com/contact-us (last visited Mar. 25, 2019). A printed version of this page is attached as ***Exhibit 14***.

45. On or about February 23, 2019, Shellpoint responded to the NOE (the "Response to the NOE"). A copy of the Response to the NOE is attached as ***Exhibit 15***.

46. In the Response to the NOE:

   a. Shellpoint admits that it "is aware that there are missing trustee funds and a possible missing payment made to the prior servicer";

   b. Shellpoint states that its bankruptcy department was "working on locating the funds to post to the loan";

   c. Shellpoint falsely answers that "the necessary payment change forms were filed with the court," as no payment change forms were filed from October 4, 2018 to December 1, 2018. *See Exhibits 2, 5*.

*See Exhibit 15*.

47. The final paragraph of the Response to the NOE provides: "Please accept our sincere apologies for any inconvenience regarding this issue. Please know that Shellpoint takes its customer service obligations very seriously and your concerns have been brought to the attention of the appropriate people within our organization." *See Exhibit 15*.

**IMPACT AND DAMAGE TO BOUAYAD**

48. Despite Bouayad having made all payments required under the terms of the Bankruptcy and Loan, and bringing Shellpoint's error to its attention, on March 14, 2019, Shellpoint sent a Notice of Intention to Foreclose attempting to collect $10,330.18 from Bouayad and claiming the Loan is past due for the October 1, 2018 payment and subsequent installments. A copy of the Notice of Intention to Foreclose is attached as ***Exhibit 16***.

49. Besides making false statements, the Notice of Intention to Foreclose is inherently confusing as well. For example, the Notice of Intention to Foreclose states that, "You must remit payment in the sum of $10,330.18. This amount includes[:] PITI for 6 months: $11,875.44 … Escrow shortage (for escrowed loans): $5,927.51." *See Exhibit 16*.

50. The above listed charges total $17,802.95. The Notice of Intention to Foreclose is inherently false, confusing, ambiguous, and misleading in that the correspondence states that the Loan is in default in an amount of $10,330.18 but the amounts add up to $17,802.95. *See Exhibit 16*.

51. Due to the actions of Shellpoint, Bouayad currently remains in a wrongful and false "default" status under the Loan despite his continued performance under the terms of the Loan as Shellpoint refuses to correct its errors.

52. Shellpoint's actions in failing to properly account for Bouayad payments made through the Bankruptcy caused Bouayad to incur additional attorneys' fees and costs to attempt to obtain information and correct errors.

53. Shellpoint directly and proximately caused the following damages to Bouayad:

   a. He is being charged and forced to pay an improper past due balance;

      b.      He suffers harm to his credit due to Shellpoint wrongfully and falsely claiming that the Loan is in default;

      c.      He had to retain and pay legal counsel to submit the NOE to Shellpoint and pay postage costs for the mailing of the NOE; and,

      d.      He suffered extreme emotional distress directly and proximately caused by Shellpoint's actions and driven by the fear that he might lose the Home and be forced to leave the Home which has resulted in loss of sleep, anxiety, depression, embarrassment, and other significant emotional distress

54.     Throughout this entire ordeal, Bouayad has simply wanted to be able to enjoy the benefit of his diligence and persistence in completing the Bankruptcy, continue making timely, proper payments on the Loan in order to begin to rehabilitate his credit, and most importantly, remain in the Home without fear of foreclosure.

**PATTERN AND PRACTICE OF REGULATION X VIOLATIONS BY SHELLPOINT**

55.     Shellpoint's actions are part of a pattern and practice of behavior in violation of Bouayad's rights and in abdication and contravention of Shellpoint's obligations under the mortgage servicing regulations set forth in Regulation X of RESPA.

56.     At the time of the filing of this Complaint, Shellpoint has had more than Five Hundred Eighty-Four (584) consumer complaints lodged against it nationally, specifically concerning the issue identified on the CFPB's consumer complaint database as "loan modification, collection, foreclosure" related to mortgages. Each such complaint is filed and cataloged in the CFPB's publicly accessible online database. (http://www.consumerfinance.gov/complaint database/).

57. At the time of the filing of this Complaint, Shellpoint has had more than Four Hundred Seventy-Nine (479) consumer complaints lodged against it nationally, specifically concerning the issue identified on the CFPB's consumer complaint database as "loan servicing, payments, escrow account" related to mortgages.

58. Bouayad has reviewed the CFPB's consumer complaint database and has identified other alleged RESPA violations by Shellpoint against other borrowers. In particular, Bouayad has reviewed the fifteen (15) consumer complaints attached hereto and identified as ***Group Exhibit 17***. The date, details, and a narrative disclosed by the consumer is set forth in each complaint. The complaints evidence conduct which demonstrates that Shellpoint has engaged in a pattern and practice of violating RESPA with respect to other borrowers.

### COUNT ONE: VIOLATION OF 12 C.F.R. § 1024.35(e)

59. Bouayad restates and incorporates all of her statements and allegations contained in paragraphs 1 through 58, in their entirety, as if fully rewritten herein.

60. 12 C.F.R. § 1024.35(a) provides that "[a] servicer shall comply with the requirements of this section for any written notice from the borrower that asserts an error and that includes the name of the borrower, information that enables the servicer to identify the borrower's mortgage loan account, and the error the borrower believes has occurred."

61. Comment 1 of the CFPB's Official Interpretations of 12 C.F.R. § 1024.35(a) provides that "[a] notice of error is submitted by a borrower if the notice of error is submitted by an agent of the borrower."

62. 12 C.F.R. § 1024.35(e)(1)(i) provides that a servicer must respond to a notice of error by either:

    (A)   Correcting the error or errors identified by the borrower and providing the borrower with a written notification of the correction, the effective date of the correction, and contact information, including a telephone number, for further assistance; or

    (B)   Conducting a reasonable investigation and providing the borrower with a written notification that includes a statement that the servicer has determined that no error occurred, a statement of the reason or reasons for this determination, a statement of the borrower's right to request documents relied upon by the servicer in reaching its determination, information regarding how the borrower can request such documents, and contact information, including a telephone number, for further assistance.

63. The NOE meets the requirements of a notice of error as defined by 12 C.F.R. § 1024.35(a). *See Exhibit 13*.

64. Bouayad sent the NOE to Shellpoint at the address Shellpoint designated for the receipt of such notices pursuant to 12 C.F.R. § 1024.35(c). *See Exhibits 13, 14*.

65. The NOE advised that Shellpoint was improperly attempting to collect an improper amount through its mortgage statements, even though Bouayad paid his arrears in the Bankruptcy and was current on his mortgage payments. *See Exhibit 13*.

66. In the Response to the NOE, Shellpoint admits there was an error and claimed it was going to correct errors and further investigate the matter. *See Exhibit 15*.

67. However, Shellpoint has failed to correct or perform a reasonable investigation into the errors asserted by and through the NOE, as demonstrated by its failure to follow up with the promises contained in the Response to the NOE and instead moving towards filing a foreclosure action against Bouayad. *See Exhibits 15, 16*.

68. Shellpoint's actions caused Bouayad to suffer actual damages, as he is being charged and forced to pay an improper past due balance, he had to retain and pay legal counsel to defend against the looming wrongful foreclosure, and he suffered extreme emotional distress directly and proximately caused by Shellpoint's actions.

69. Shellpoint's failures to correct or properly investigate the errors alleged in the NOE constitutes clear, separate, and distinct violations of 12 C.F.R. § 1024.35(e).

70. Shellpoint's actions are believed to be part of a pattern and practice of behavior in conscious disregard for Bouayad's rights.

71. As a result of Shellpoint's actions, Shellpoint is liable to Bouayad for actual damages and statutory damages. 12 U.S.C. § 2605(f)(1).

72. Additionally, Bouayad requests reasonable attorneys' fees and costs incurred in connection with this action. 12 U.S.C. § 2605(f)(3).

## COUNT TWO: VIOLATIONS OF 15 U.S.C. §§ 1692, *et seq.*

73. Bouayad restates and incorporates all of her statements and allegations contained in paragraphs 1 through 54, in their entirety, as if fully rewritten herein.

74. Bouayad is a "consumer" as he is a natural person and resident of Hudson County, New Jersey obligated or allegedly obligated to pay the Loan. 15 U.S.C. § 1692a(3).

75. The Loan is a "debt" is an obligation or alleged obligation of Bouayad to pay money arising out of a transaction primarily for personal, family, or household purposes- Bouayad's purchase of the Home for his primary, principal residence. 15 U.S.C. § 1692a(5).

76. Shellpoint is a "debt collector" because it regularly collects or attempts to collect on the Loan and other mortgage loans owed to creditors such as FHLMC. 15 U.S.C. § 1692a(6).

77. The Loan was in default at the time Shellpoint began to collect the debt as the Bankruptcy was still pending when Shellpoint began servicing the Loan.

78. Shellpoint's actions in collecting and attempting to collect the improper amounts in its mortgage statements and the Notice of Intention to Foreclose constitute violations of 15 U.S.C. § 1692f generally, engaging in any unfair or unconscionable means to collect or attempt to collect any debt, and 15 U.S.C. § 1692f(1) specifically, the collection of any amount that is not expressly authorized by the Loan or permitted by law.

79. The false representations of Shellpoint in the mortgage statements, the Response to the NOE, and the Notice of Intention to Foreclose constitute violations of 15 U.S.C. § 1692e generally, making any false, deceptive, or misleading representation or means in connection with the debt collection, and, specifically:

    a. Misrepresenting the character, amount, or legal status of the Loan (15 U.S.C. § 1692e(2)(A));

    b. Threatening to take an action that cannot legally be taken – filing a foreclosure action (15 U.S.C. § 1692e(5)); and

    c. Using false representations or deceptive means to collect or attempt to collect on the Loan (15 U.S.C. § 1692e(10)).

80. As a consequence of Shellpoint's actions, in attempting to collect improper amounts, making false representations, and threatening to file foreclosure, Bouayad suffered actual damages, as plead, supra, at ¶ 53.

81. As a result of Shellpoint's actions, Shellpoint is liable to Bouayad for actual damages and statutory damages. 15 U.S.C. § 1692k(a)(1).

82. Additionally, Bouayad requests reasonable attorneys' fees and costs incurred in connection with this action. 15 U.S.C. § 1692k(a)(3).

## COUNT THREE: VIOLATIONS OF N.J.S.A § 56:8-2

83. Bouayad restates and incorporates all of her statements and allegations contained in paragraphs 1 through 54, in their entirety, as if fully rewritten herein.

84. The CFA prohibits:

> The act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate…

N.J.S.A. § 56:8-2.

85. In the operation of his business, Shellpoint has engaged in the use of unconscionable commercial practices, as described, *supra*.

86. Each unconscionable practice, false promise, misrepresentation and/or knowing omission of material fact by Shellpoint described, *supra*, constitutes a separate violation under the CFA.

87. Bouayad is a "person" as defined by N.J.S.A. § 56:8-1(d) as he is a natural person.

88. Shellpoint is a "person" as defined by N.J.S.A. § 56:8-1(d) because Shellpoint is a partnership, corporation, company, trust, business entity, or business association.

89. Shellpoint's attempts to collect improper amounts through the mortgage statements and the Notice of Intention to Foreclosure constitute prohibited acts under the CFA.

15

90. Shellpoint's false representations in the Response to the NOE failure to correct errors or reasonably investigate as promised constitute prohibited acts under the CFA.

91. Shellpoint's threat to file a foreclosure action constitutes a prohibited act under the CFA.

92. Shellpoint's unconscionable commercial practices have caused Bouayad to suffer an ascertainable loss, specifically he had to retain and pay counsel to submit the NOE and review the Response to the NOE and prepare to defend against the looming foreclosure threatened by Shellpoint. Further, Shellpoint is forcing Bouayad to pay more than what he owes.

93. Bouayad is entitled to treble the damages caused by Shellpoint's unconscionable commercial practices. N.J.S.A. § 56:8-19.

94. Bouayad further requests, in addition to treble damages, "other appropriate legal or equitable relief" in the form of damages for the extreme emotional distress, directly and proximately caused by Shellpoint's actions. N.J.S.A. § 56:8-19.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Rachid Bouayad prays that this Court enter its order granting judgment against Defendant NewRez, LLC d/b/a Shellpoint Mortgage Servicing, for the following:

- A. Actual damages in an amount to be determined at trial for the allegations contained in all Counts;
- B. Statutory damages of Two Thousand Dollars ($2,000.00) per violation contained in Count One;
- C. Statutory damages of One Thousand Dollars ($1,000.00) for the allegations contained in Count Two
- D. Treble damages as to Count Three; and,
- E. Reasonable attorneys' fees and costs as to all Counts;
- F. Such other relief which this Court may deem appropriate.

Respectfully submitted:

/s/ Javier L. Merino
Javier, L. Merino
Dann Law
1 Meadowlands Plaza, Suite 200
East Rutherford, New Jersey 07073
Phone: (216) 373-0539
Facsimile: (216) 373-0536
notices@dannlaw.com
*Counsel for Plaintiff Rachid Bouayad*

## JURY DEMAND

Bouayad hereby requests a trial by jury on all issues, with the maximum number of jurors permitted by law.

/s/ Javier L. Merino
Javier, L. Merino
Dann Law
*Counsel for Plaintiff Rachid Bouayad*